AARON M. McKOWN (SBN 208781)
aaron@mckownbailey.com
MICHAEL O'BRIEN (SBN 277244)
mobrien@mckownbaileycom
**McKOWN BAILEY**
520 Newport Center Drive, Suite 470
Newport Beach, CA 92660
Telephone:  (949) 858-3200

Attorneys for Plaintiffs
FLYING HELIBALL, LLC and
WORLD TEACH TOYS, INC.

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLYING HELIBALL, LLC, a California limited liability company; and WORLD TECH TOYS, INC., a California Corporation, | Case No.: |
| Plaintiffs, | **COMPLAINT FOR:** |
| v. | 1. **Trade Dress Infringement [15 U.S.C. § 1125(a)(3);** |
| | 2. **False Designation of Origin [15 U.S.C. § 1125(a);** |
| BIG TIME TOYS LLC, a Tennessee Company, | 3. **Patent Infringement [35 U.S.C. § 271]** |
| Defendant. | |
| | **JURY TRIAL DEMANDED** |

1    Plaintiffs FLYING HELIBALL, LLC ("FH") and WORLD TECH TOYS,

2 INC. ("WTT" and collectively "Plaintiffs") by and through their undersigned

3 counsel, hereby complain against Defendant BIG TIME TOYS LLC ("BTT" or

4 "Defendant"), and respectfully alleges as follows:

5                            **NATURE OF THE ACTION**

6        1.    WTT designs, makes, and sells toys.   FH licenses technology

7 regarding functional aspects of the toys, particularly related to U.S. Patent

8 7,100,866 ("the '866 Patent").   WTT owns the toy designs in exclusivity and

9 exploits these designs for profit by manufacturing and selling products bearing the

10 designs or entering into licensing agreements for sale or display by third parties.

11 The most famous of these designs sold in brick-and-mortar stores is WTT's iconic

12 Flying Heliball Design.  The Flying Heliball Design also uses the technology of the

13 '866 Patent.  Defendant has knowingly and intentionally used the Flying Heliball

14 Design in the production of unauthorized goods, and without entering a licensing

15 agreement with Plaintiffs, which infringes FH's '866 Patent, WTT's trade dress,

16 and presents a false designation of origin.

17                          **JURISDICTION AND VENUE**

18       2.    This Court has original subject matter jurisdiction over Plaintiff's

19 federal claims arising under the Patent Act, 35 U.S.C. §271 et seq., Lanham Act, 15

20 U.S.C. § 1051 et seq., pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1338(b).

21       3.    Personal jurisdiction over Defendant is proper in this District because

22 of Defendant's presence in this judicial district because Defendant has availed itself

23 of the rights and benefits of the laws of California, because Defendant has derived

24 substantial revenue from the sales of the Infringing Product in California, and

25 because it has systematic and continuous business contacts with California.

26       4.    Upon information and belief, Defendant entered into a consignment

27 agreement with Target where Defendant shipped products to non-party Target

28 Corporation ("Target") in California located at 289 E 17th St, Costa Mesa,

California 92627, among other locations to be sold on shelves to customers in this judicial district.

5.      Venue is proper in this district under 28 U.S.C. §§ 1391(b), 1400(b).

## THE PARTIES

6.      WTT is a corporation formed under the laws of California having a principal place of business at 28777 Witherspoon Parkway, Valencia, California 91355.

7.      FH is a company organized under the laws of California having a principal place of business at 28777 Witherspoon Parkway, Valencia, California 91355.

8.      Upon information and belief, BTT is a limited liability company that is organized in Tennessee with a physical location in Nashville, Tennessee, and inventory stored at Target facilities in Orange County, California.

## FACTUAL BACKGROUND

9.      FH and WTT are international sellers and distributors of toys and are largely focused on radio-controlled helicopters and other flying vehicles.

10.      United States Patent Number 7,100,866 ("the '866 Patent"), entitled Control System for a Flying Vehicle, was duly and legally issued on September 5, 2006, and names Jeffrey Rehkemper, Nicholas Grisolia, Peter Greenley, and Bret Gould as the inventors.  Attached as **Exhibit A** is a true and correct copy of the '866 Patent.

11.      The '866 Patent claims, among other things, in Claim 1, "A vehicle having a means for propelling in a vertical direction, further comprising: a transmitter positioned on the bottom of said vehicle for transmitting a signal from the vehicle downwardly away from said vehicle; a receiver positioned on the bottom of said vehicle for receiving said signal as it is bounced off of a surface, defined as a bounced signal; and a control system that automatically sets a speed of the propelling means in response to the receiver, said control system having a first

means to set the speed of the propelling means to a first speed when the receiver receives the bounced signal and the control system having a second means to set the speed of the propelling means to a second speed when the receiver does not receive the bounced signal, the first speed being predefined as a speed that causes the vehicle to gain altitude and the second speed being predefined as a speed that causes the vehicle to lose altitude."

12.    The '866 Patent also claims, among other things, in Claim 10, "A system to control a direction of movement of a flying vehicle, the control system comprising: a transmitter/receiver pair positioned on the vehicle, the transmitter transmitting a signal from the vehicle in a predetermined direction; a means to fly said vehicle in a direction opposite of said predetermined direction when said signal is bounced off of a surface and received back by the receiver; and a means to fly said vehicle in a direction similar to said predetermined direction when said receiver does not receive said signal."

13.    In 2022, the '866 Patent was assigned to FH, which is the owner of the entire right, title, and interest in the '866 Patent.  The claims in the '866 patent relate to a control system for a flying toy.

14.    For many years, FH and its predecessors in ownership have required licensees to mark products using the technology of the '866 patent in a legible, unconcealed manner that is substantially consistent and continuous.  These markings have included "U.S. Patent 7,100,866" putting the public on notice of the '866 Patent.



15.    The design, color, and shape, as well as the overall appearance of the Flying Heliball

Design (its "trade dress") is distinctive and non-functional. WTT has developed its distinctive graphic Flying Heliball Design with custom design graphics. The Flying Heliball Design's distinctive and unique look is something that customers have come to recognize. The Flying Heliball Design is shown above in WTT's Comet IR UFO Heli Ball.

16. The overall look of WTT's Flying Heliball Design, consisting of its shape, size, and the specific combination of, inter alia, plastic working of the exterior of the clamshells of the spheres including the central circle, surrounding pedals, ring of pentagons surrounding the ring of pedals, three rings of increasingly larger hexagons surrounding the ring of pentagons, and a flat row next to the last row of pentagons (and copied by Defendant). The combination of these features and design elements is distinctive and non-functional. It is the combination of all these decorative features that gives WTT's Flying Heliball Design its distinctive, non-functional look. These design choices do not lower the cost of the product or in any way affect the operation of the flying toy in the absence of separate functional features.

17. The Flying Heliball Design is wholly original by WTT, and WTT has never authorized or consented in any way to any use by Defendant of the Flying Heliball Design.

18. The Flying Heliball Design has long been offered and advertised for sale by WTT on numerous outlets, including but not limited to, large authorized third-party retailers. As such, there is no doubt that third parties, including Defendant, had access to WTT's Flying Heliball Design.

19. Similarly, WTT's packaging for the Comet IR UFO Heli Ball meets all of the statutory patent marking requirements for FH, assuming FH had any requirement for WTT to mark its product packaging at all.

**Defendant's Infringing Activities and Products**

20. In the Summer of 2024, Plaintiffs discovered that Defendant was

offering for sale in Target Corporation brick and motor stores, as well as on Target.com, a LED Helicopter Ball, that, without authorization, contains both the Flying Heliball Design and the technology of the '866 Patent (the "Infringing Products").

21.    Plaintiffs are informed and believe and thereon allege that the level of detail in the Infringing Products could only have been acquired by actively purchasing a product with the Flying Heliball Designs and scanning the Flying Heliball Design directly from WTT's products.

22.    Plaintiffs are also informed and believe and hereon alleges that, as a result of WTT's extensive sales and advertising of the Flying Heliball Design, in the minds of consumers, the distinctive trade dress of the products has come to symbolize the source and quality of the WTT brand.  Plaintiffs are thus informed and believe and thereon allege that the trade dress of the Flying Heliball Design has acquired secondary meaning and is recognized by consumers as designating the origin of the Flying Heliball Design by virtue of the following facts, among others:

a.    **Consumer Perception**:  WTT is informed and believes and thereon alleges that consumers associate the Flying Heliball Design's trade dress with WTT.  WTT is further informed and believes, and thereon alleges that, as a result of its sales and advertising of the Flying Heliball Design, in the minds of consumers, the distinctive trade dress of the Flying Heliball Design has come to symbolize the source and quality of the products bearing the Flying Heliball Designs.

b.    **Substantial Advertising**:  Since 2015, WTT has extensively advertised, marketed, and sold WTT's products, including products bearing the Flying Heliball Design, through the United States.  The Flying Heliball Design, with photographs, has been featured on

1    Instagram, WTT's website, and numerous toy websites.

2    c.    **<u>Substantial Use of the Trade Dress</u>**:  WTT has used the trade

3    dress of the Flying Heliball Design since as early as July 2018 and

4    has marketed and sold its Flying Heliball Design throughout the

5    United States.  WTT has to date sold more than 400,000 products

6    containing the Flying Heliball Design in the United States alone.

7    d.    **<u>Exclusivity</u>**: WTT solely controls licensing of all rights, including

8    intellectual property rights, to the Flying Heliball Design in the

9    United States.

10    e.    **<u>Copying</u>**: WTT is informed and believes and thereon alleges that

11    Defendant intentionally designed the Infringing Products to

12    resemble, in most case exactly, the Flying Heliball Designs, so

13    closely that consumers are likely to be, and in fact have been,

14    confused as to the source of Defendant's goods.  The image below

15    depicts Defendant's Infringing Products side by side with WTT's

16    Flying Heliball Design.



i. [A] – Indicates a central hub that is generally round and is found in both flying toys.

ii. [B] – Indicates one of many ornamental pedals joined to the central hub [A], extending outward therefrom and found in both flying toys.

iii. [C] – Indicates a row of pentagons, surrounding the row of pedals [B] in an identical place and having an identical shape in both flying toys.

iv. [D] – Indicates a row of small hexagons, surrounding the row of pentagons [C] in an identical place in both flying toys.

v. [E] – Indicates a row of medium hexagons, surrounding the small row of hexagons [D] and having an identical place in both flying toys.

vi. [F] – Indicates a row of large hexagons, surrounding the row of medium hexagons [D] and having an identical place in both flying toys.

f.    **Actual Confusion**: Consumers are likely to be confused as to the source of Defendant's Infringing Products.

23.    Based on the foregoing, WTT's distinctive and non-functional trade dress has thus become, and is, a valuable asset of WTT's business symbolizing its goods, crafts, artwork, and its goodwill. The following identified, ornamental, non-functional features of WTT's Flying Heliball Design have become its renowned trade dress.

24.    The trade dress of WTT's Flying Heliball toy and a description of the copying of the trade dress is more particularly described and shown with pictures paragraph 14(e) and generally described below:

a.    The toy has a clamshell with a top portion that is attached to a

bottom portion with a series of screws.  Both portions are more/less symmetrical and have:

b.    A central hub that is round.

c.    Many ornamental pedals joined to the central hub.

d.    A row of pentagons, surrounding the row of pedals.

e.    A row of small hexagons, surrounding the row of pentagons.

f.    A row of medium hexagons, surrounding the row of small hexagons.

g.    A row of large hexagons, surrounding the row of medium hexagons.

25.    Plaintiffs are informed and believe and thereon allege that Defendant, having recognized the consumer awareness and goodwill associated with WTT's Flying Heliball Design, conspired to usurp that goodwill for themselves by designing, manufacturing, marketing, and/or selling, without the permission of knowledge of Plaintiffs, imitations of the Flying Heliball Design.

26.    Plaintiffs are informed and believe and thereon allege that Defendant intentionally designed its products to resemble the Flying Heliball Design so closely that consumers are likely to be, and in fact have been, confused as to the source of Defendant's goods and have bought those goods on the assumption that they were manufactured or distributed by WTT or affiliated in some way with WTT.  Given that there are a multitude of alternative ways in which a manufacturer can design, configure, and decorate a flying toy (and manufacturers in fact do so), the fact that Defendant copied WTT's Flying Heliball Design in some ways down to the last detail, with similar patterns, plastic working, symmetry, and arm arrangement, makes it likely that consumers familiar with WTT's distinctive and nonfunctional design for its Flying Heliball Design will be confused as to the source of Defendant's knockoff copy of WTT's products.  As a result, consumers have in fact been confused as to the source of Defendant's products.

27.     Plaintiffs are informed and believe and thereon allege that Defendant has intentionally sold its knockoff Infringing Products using WTT's trade dress to deceive consumers and palm off Defendant's products as those of WTT and to take advantage of the goodwill created by WTT for the Flying Heliball Design in the United States and California.

28.     Plaintiffs are informed and believe and, on that basis, allege that unless enjoined by this Court, Defendant intend to continue their course of conduct and to use wrongfully, infringe upon, sell and otherwise profit from WTT's trade dress, and commit acts of "palming-off" against WTT.  As a direct and proximate result of the acts of Defendant, alleged above, WTT has already suffered irreparable damage and has sustained lost profits and the loss of goodwill.  WTT has no adequate remedy at law to redress all of the injuries that Defendants has caused and intends to cause by its conduct.  Plaintiff will continue to suffer irreparable damage and sustain lost profits until Defendant's actions as alleged above are enjoined by this Court.

29.     Upon information and belief, Defendant has and continues to infringe the '866 Patent by making, using, selling, and offering for sale the Infringing Products in the United States.  The Infringing Products embody or use the inventions claimed in the '866 Patent.

30.     Briefly, the Infringing Products have a controller that is electrically connected to a battery, two propellors with a motor assembly, a receiver, and a transmitter, on the device.  When a signal from a transmitter bounces off a surface and is received by the receiver, the controller adjusts electrical current from the battery to the propellor to cause the Infringing Products to fly away from the surface.

31.     More detailed claim charts for claim 1 and claim 10 are attached to this complaint in **Exhibit B.**

32.     Upon information and belief, Defendant has been and is inducing

infringement of the '866 Patent by actively and knowingly inducing others to make, use, sell, offer for sale, or import the Infringing Products that embody or use the inventions claimed in the '866 Patent.

33.    Specifically, Defendant has induced Target to sell the Infringing Products knowing the Infringing Products infringed the '866 Patent. Defendant actively encouraged infringement by reaching out to buyers at the Third-Party Sellers and encouraging those buyers to purchase goods that infringed the '866 Patent.

34.    Upon information and belief, Defendant has known of the existence of the '866 Patent, and these acts of infringement have been willful and in disregard for the '866 Patent, without any reasonable basis for believing that it had a right to engage in the infringing conduct. Specifically, Plaintiff has provided Defendant with a copy of the '866 Patent and infringement allegations as shown in **Exhibit C.**

35.    FH has a licensee, WTT, through which profits inexorably flow to FH. Infringing marketplace participants add units into the marketplace, lower the price for each individual unit sold, and thus, reduce the amount of revenue FH makes from its licensees.

## **FIRST CLAIM FOR RELIEF**

### **(Trade Dress Infringement – 15 U.S.C. § 1125(a)(3))**

36.    WTT repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 35, inclusive, as if fully set forth herein.

37.    WTT's trade dress at issue consists of the design, shape, texture, and overall appearance of the Flying Heliball Design as more particularly described above and whose trade dress was infringed by Defendant.

38.    These design elements are distinctive, aesthetic, and non-functional.

39.    WTT first used and sold the Flying Heliball Design in commerce in the United States and California and have used them continuously in the United

States and California since as early as 2018.

40.    WTT's trade dress has acquired secondary meaning.

41.    WTT is informed, believes, and thereon alleges that Defendant has been designing, manufacturing, marketing, and/or selling their knockoff Infringing Products with WTT's trade dress since as early as 2024.  Indeed, WTT is informed and believes that Defendant has purchased some of the Infringing Products directly from WTT in order to copy the Flying Heliball Design and to sell its Infringing Products at a discounted price in competition with WTT.

42.    Defendant is not now, and never has been, authorized by WTT to use its unique trade dress or any confusingly similar trade dress in connection with the marketing and/or sale of Defendant's goods.

43.    WTT is informed and believes and thereon alleges that Defendant has marketed its goods with a confusingly similar trade dress for the express purpose of trading upon WTT's goodwill among the consuming public.

44.    WTT is informed and believes and thereon alleges that as a proximate result of the unfair advantage accruing to Defendant from trading on WTT's goodwill, Defendant has now made substantial sales and profits in amounts to be established according to proof.

45.    As a proximate result of the unfair advantage accruing to Defendant from deceptively trading on WTT's goodwill and consumer recognition, WTT has been damaged and deprived of substantial sales of its Flying Heliball Design and has been deprived of the value of its trade dress as a commercial asset, in amounts to be established according to proof.

46.    WTT is informed and believes and thereon alleges that, unless restrained by this Court, Defendant will continue to infringe upon WTT's trade dress, thus necessitating a multiplicity of judicial proceedings, and pecuniary compensation will not afford WTT adequate relief for the damage to its trade dress. Further, WTT is informed and believes and thereon alleges that, in the absence of

injunctive relief, consumers are likely to continue being mistaken or deceived as to the true source, origin, sponsorship, and/or affiliation of Defendant's knockoff Infringing Products.

47.    WTT is informed and believes and thereon alleges that Defendant's acts were committed, and continue to be committed, with actual notice of WTT's exclusive rights and with an intent to cause confusion and mistake, and/or to deceive, and to cause injury to the reputation and goodwill associated with WTT and its products.  Pursuant to U.S.C. § 1117, WTT is therefore entitled to recovering three times its actual damages or three times Defendant's profits, whichever is greater, together with WTT's attorney's fees.

48.    In addition, pursuant to U.S.C. § 1118, WTT is entitled to an order requiring the destruction of all Infringing Products and marketing materials in Defendant's possession.

## SECOND CLAIM FOR RELIEF

### (Violation of 15 U.S.C. § 1125(a)-False Designation of Origin)

49.    WTT repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 48, inclusive, as if fully set forth herein.

50.    WTT is informed and believes and thereon alleges that at all times relevant herein, Defendant had or should have had notice of WTT's ownership of the trade dress described herein.

51.    WTT is informed and believe that in or about the Summer 2024, and continuing thereafter, Defendant caused its Infringing Products to enter interstate commerce by making, using, exporting, and selling to consumers in the United States and California the Infringing Products bearing WTT's trade dress.

52.    Said uses of WTT's trade dress are a false designation of origin, which is likely to cause confusion, to cause mistake, and to deceive as to the affiliation, connection, and/or association of the Infringing Products sold by Defendant with WTT's designs and as to the origin, sponsorship, and/or approval of the Infringing

Products by WTT.

53.     The foregoing acts of Defendant constitute a violation of 15 U.S.C. § 1125(a) in that Defendant has used in connection with goods false designations of origin, a false and/or misleading representation of fact, which is likely to cause confusion, and to cause mistake, and to deceive as to the affiliation, connection, and or association of Defendant with WTT's Flying Heliball Design.

54.     As a direct and proximate result of Defendant's acts, as hereinabove alleged, WTT has been damaged in a sum which is to be determined at trial.

55.     WTT is informed and believes and thereon alleges that Defendant has been unjustly enriched as a direct and proximate result of their violation of 15 U.S.C § 1125(a) in a sum which is to be determined at trial.

## THIRD CLAIM FOR RELIEF

### (Patent Infringement – 35 U.S.C. § 273)

56.     Plaintiff repeats and realleges paragraphs 1 through 35 hereof, as if fully set forth herein.

57.     Upon information and belief, Defendant has been and is infringing the '866 Patent by making, using, selling, or offering for sale in the United States, or importing into the United States, including within this judicial district, flying toys, including those sold under the name TOYPLANET, in violation of 35 U.S.C. § 271(a).

58.     Upon information and belief, Defendant has been and is inducing infringement of the '866 Patent by actively and knowingly inducing others to make, use, sell, offer for sale, or import flying toys that embody or use the invention claimed in the '866 Patent, including those sold under the name TOYPLANET, in violation of 35 U.S.C. § 271(b).

59.     Upon information and belief, Defendant has been and is infringing, and contributing to the infringement of the '866 Patent by making, using, selling, or offering for sale in the United States, or importing into the United States,

including within this judicial district, replacement parts for the flying toys sold under the name TOYPLANET. These replacement parts including wings, cables, and portions of the flying assembly have no substantial non-infringing use than to be used as part of the Infringing Products in furtherance of infringing the '866 Patent.

60. Defendant's infringement has been, and continues to be, knowing, intentional, and willful.

61. Defendant's acts of infringement of the '866 Patent have caused and will continue to cause FH damages for which FH is entitled to compensation pursuant to 35 U.S.C. § 284.

62. This case is exceptional and, therefore, FH is entitled to an award of attorneys' fees pursuant to 35 U.S.C. § 285.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request judgment against Defendant as follows:

1. That Defendant, its directors, officers, agents, servants, employees, and all other persons who acted in concert or privity or participation with each of them, be enjoined from directly or indirectly infringing WTT's trade dress or participating or assisting in any such activity.

2. That Defendant, its directors, officers, agents, servants, employees, and all other persons who acted in concert or privity or in participation with each of them, be enjoined to return to WTT any and all products, packaging, and/or product literature that infringes WTT's trade dress.

3. That Defendant, its directors, officers, agents, servants, employees, and all other persons who acted in concert or privity or in participation with each of them, be enjoined to recall from all distributors, wholesalers, jobbers, dealers, retailers and all others known to Defendant, any and all products, packaging and/or product literature that infringes WTT's trade dress.

4. That Defendant be enjoined to deliver upon oath, to be impounded

during the pendency of this action and destroy pursuant to judgment herein, all products, packaging, and/or product literature that infringes upon WTT's trade dress.

5. That Defendant be required to file with the Court and to serve on WTT, within 30 days after service of the Court's order as herein prayed, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the Court's impoundment order.

6. That judgement be entered for each of the Plaintiffs and against Defendant for actual damages, according to proof and for any profits and/or unpaid royalties attributable to infringements of WTT's trade dress and infringement of FH's patent.

7. That judgement be entered for WTT and against Defendant for statutory damages and attorney's fees, including, without limitation, treble damages as authorized by 15 U.S.C. § 1117(a), (b).

8. That Defendant be adjudged to have infringed, and actively induced infringement of the '866 Patent, in violation of 35 U.S.C. § 271(a) and (b);

9. That Defendant be ordered to account and pay damages adequate to compensate FH for Defendant's infringement of the '866 Patent, pre-judgment, post-judgment interest, and costs, pursuant to 35 U.S.C. § 284;

10. That damages awarded for Defendant's infringement of the '866 Patent be increased up to three times the actual amount assessed, pursuant to 35 U.S.C. § 284;

11. That the Court declare this case exceptional and awarding WTT its reasonable attorneys' fees pursuant to 35 U.S.C. § 285.

12. That the Court award any such other and further relief as this Court deems just and proper.

1   Dated:  March 14, 2025                     **McKOWN BAILEY**

2

3                                              By: _____

4                                                  Aaron M. McKown
                                                   Michael O'Brien
5                                                  Attorneys for Plaintiffs
                                                   FLYING HELIBALL, LLC and
6                                                  WORLD TECH TOYS, INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **DEMAND FOR JURY TRIAL**

A jury trial is demanded pursuant to Fed. R. Civ. P. 38.

Dated:  March 14, 2025            **McKOWN BAILEY**

By: _____
         Aaron M. McKown
         Michael O'Brien
         Attorneys for Plaintiffs
         FLYING HELIBALL, LLC and
         WORLD TECH TOYS, INC.